FILED

2005 May-03  PM 04:58
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **MARGARET TRUSS**,       ) | |
|                  ) | |
|     Plaintiff,      ) | |
|                 ) | |
| v.                ) | Civil Action No.: **CV-05-PT-579-E** |

**MARGARET TRUSS**,    )

    Plaintiff,    )

v.            )     Civil Action No.: **CV-05-PT-579-E**

**OCWEN FEDERAL BANK, FSB;**
**PCFS MORTGAGE RESOURCES**
**a division of THE PROVIDENT**
**BANK, INC.; HOMESOUTH**
**MORTGAGE, SERVICES, INC.;**
**Fictitious Defendants A, B, C, . . .**
**those individuals, partnerships,**
**corporations, limited liability**
**companies, or other legal entities**
**who are or have been mortgage**
**brokers, holders or servicers of**
**the notes and mortgages executed**
**by the Plaintiff, or who have**
**otherwise attempted to collect the**
**fees, finance charges, and other**
**penalties from Plaintiff,**

    Defendants.

## MEMORANDUM OPINION

This cause comes on to be heard upon plaintiff Margaret Truss' Motion to Remand, filed on March 30, 2005.

## FACTS[1] AND PROCEDURAL HISTORY

Plaintiff Margaret Truss ("Truss") is a resident of Talladega County, Alabama. (Cmpt. ¶ 1). Defendant Ocwen Federal Bank, FSB ("Ocwen") is a federally chartered savings bank that

---

[1] The court notes where "facts" appear disputed.

services mortgage loans that are secured by property in Talladega County, Alabama.  (Ocwen

Answer ¶ 2).[2]  Defendant PCFS Mortgage Resources, a division of the Provident Bank, Inc.,

("PCFS") is an Ohio banking corporation with its principal place of business in Cincinnati, Ohio.

(PCFS Consent to Removal).  Defendant HomeSouth Mortgage Services, Inc. ("HomeSouth") is

an Alabama corporation doing business in Talladega, Alabama.  (Cmpt. ¶ 4).

Truss filed this action on February 8, 2005 in the Circuit Court of Talladega County,

Alabama.  The complaint alleges multiple causes of action relating to a mortgage on property

owned by Truss in Talladega County.  HomeSouth closed the original mortgage transaction, but

the servicing rights to the loan were transferred to one or more of the defendants.  (Cmpt. ¶¶ 8-9).

Truss contends that the defendants did the following: improperly charged late fees; misapplied

payments; improperly held payments; improperly returned payments; improperly charged

unidentified fees, finance charges and penalties; miscalculated amounts owed; forced Truss into

forbearance agreements; charged excessive fees; improperly began foreclosure proceedings;

improperly force-placed insurance on Truss' home; incorrectly reported the status of Truss' loan

to various credit reporting agencies; collected money which was not due; refused to provide or

provided inconsistent payoff amounts; and failed to disclose that such fees, finance charges,

and/or penalties would be charged prior to the closing of the mortgage.  (*Id.* at ¶¶ 11-27).[3]

The complaint contains the following twelve counts: (1) Count One - Fraudulent

---

[2] The complaint alleges that Ocwen is a corporation.  (Cmpt. ¶ 2).  However Ocwen denies that it is a corporation.  (Ocwen Answer ¶ 2).

[3] The complaint does not identify which specific defendants took which specific actions. Instead it asserts that all named and fictitious defendants did the things alleged.

suppression arising under Alabama state law[4]; (2) Count Two – Fraudulent misrepresentation

arising under Alabama state law[5]; (3) Count Three – Fraudulent misrepresentation arising under

Alabama state law[6]; (4) Count Four – Fraudulent suppression arising under Alabama state law[7];

(5) Count Five – Breach of contract under Alabama state law[8]; (6) Count Six – Negligence under

---

[4] Count One alleges that defendants breached a duty to disclose to plaintiff that she would be charged "improper or otherwise excessive fees, finance charges, and/or penalties in connection with [her] note and mortgage."  (Cmpt. ¶¶ 30-31).

[5] Count Two states in part:

> Defendants intentionally, recklessly, wantonly, maliciously and/or negligently misrepresented the fees, finance charges, and penalties which were, were to be, or could be assessed and collected from Plaintiff.

(Cmpt. ¶ 34).

[6] Count Three asserts, in part, "Defendants intentionally, recklessly, wantonly, maliciously and/or negligently misrepresented that they would promptly apply payments received to Plaintiff's account."  (Cmpt. ¶ 40).

[7] Count Four states:

> Defendants intentionally, recklessly, wantonly, maliciously and/or negligently suppressed the correct amount due from Plaintiff pursuant to the terms of Plaintiff's note and mortgage.

> As a result of not being made aware of such suppressed material facts, Plaintiff entered into the loan transaction with Defendants and/or delayed refinancing those contracts.

(Cmpt. ¶¶ 46-47).

[8] Count Five simply alleges that defendants caused damage to plaintiff by breaching a contract that existed between them and plaintiff.  (Cmpt. ¶¶ 51-53).

Alabama state law[9]; (7) Count Seven – Wantonness under Alabama state law[10]; (8) Count Eight – Intentional infliction of emotional distress under Alabama state law[11]; (9) Count Nine – Conversion under Alabama state law[12]; (10) Count Ten – Money paid by mistake under Alabama state law[13]; (11) Count Eleven – Defamation under Alabama state law[14]; and (12) Count Twelve

---

[9] Count Six asserts that defendants damaged plaintiff by being negligent in the handling of her loan.  (Cmpt. ¶¶ 55-56).

[10] Count Seven alleges that defendants damaged plaintiff by being wanton in the handling of her loan.  (Cmpt. ¶¶ 58-59).

[11] Count Eight states:

> Defendants intentionally inflicted emotional distress upon Plaintiff by threatening to foreclose on Plaintiff's property for failure to pay fees and charges which Defendants had no right to collect and thus had no right to foreclose, and otherwise made representations of foreclosure when they had no right to affect Plaintiff's ownership in the property.

> Defendants intentionally inflicted emotional distress upon Plaintiff by harassing Plaintiff by telephone and mail regarding the status of Plaintiff's loan and fees and charges which were being applied to Plaintiff's account improperly.

> Such conduct was outrageous and in contravention of good conduct and good faith and should thus be deemed repugnant by our society.

(Cmpt. ¶¶ 61-63).

[12] Count Nine contends, "[t]he defendants have converted to their own use the monies as paid by Plaintiff, said monies being the property of Plaintiff."  (Cmpt. ¶ 66).

[13] Count Ten asserts that "Defendants owe Plaintiff for money paid by Plaintiff to the Defendants by mistake."  (Cmpt. ¶ 69).

[14] Count Eleven states:

> Defendants intentionally, recklessly, wantonly, maliciously and/or negligently caused negative and untruthful information regarding Plaintiff's credit or financial condition to be published to third parties.

– Civil conspiracy under Alabama state law.[15]

Immediately preceding Count One, the complaint states as follows:

> Plaintiffs disclaim any cause of action arising under the Constitution, treaties, or other laws of the United States, including but not limited to any claim arising from an act or omission on a federal enclave or by any officer of the United States or any agent or person acting on behalf of such individual, or any claim deemed to be "completed preempted" by federal law.  No claim under admiralty or maritime law is alleged.  To the extent this paragraph conflicts with any other allegations herein, this paragraph controls.

(Cmpt. ¶ 28).

Ocwen, with the consent of PCFS and HomeSouth, removed the action to this court on March 17, 2005 on the basis of federal question subject matter jurisdiction.  In their Notice of Removal, defendants contend that plaintiff's claims are completely preempted by federal law, specifically the Home Owner's Loan Act ("HOLA"), and that resolution of her claims will necessitate adjudication of substantial, disputed questions of federal law.  (Notice of Removal ¶ 5).

According to Ocwen, this action is one in a series of over 30 substantively identical actions challenging Ocwen's mortgage servicing practices filed by plaintiff's counsel in state courts throughout Alabama and Mississippi.  Ocwen contends that it has removed each of these actions to federal court and has petitioned the Judicial Panel on Multidistrict Litigation ("Panel")

---

This information was false and defamatory.

As a result, Plaintiff was unable to refinance or was otherwise damaged.

(Cmpt. ¶¶ 72-74).

[15] Count Twelve asserts that defendants conspired with each other to commit the wrongs alleged in the complaint.  (Cmpt. ¶¶ 76).

to transfer them to a multidistrict proceeding, *In re Ocwen Federal Bank FSB Mortgage Servicing Litigation,* MDL No. 1604, currently pending before Judge Norgle in the Northern District of Illinois.

Ocwen has submitted an order of the Panel showing that eleven of these cases were transferred to MDL No. 1604 on February 16, 2005. Ocwen has further submitted an April 1, 2005 Conditional Transfer Order of the Panel, which preliminarily transfers this action, along with one other, to the multidistrict proceeding. Finally, Ocwen had submitted orders staying six other, allegedly identical, actions in Alabama federal courts, pending the decision of the Panel.

## MOTION TO REMAND STANDARD

Federal courts are courts of limited jurisdiction. *See Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001). Therefore, federal courts have power to hear only those cases that they have been authorized to hear by the Constitution or by Congress. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). The limited nature of federal court jurisdiction has caused the Eleventh Circuit to favor remand of removed cases where federal jurisdiction is not absolutely clear. *Russell Corp.*, 264 F.3d at 1050. The removal statute is to be construed narrowly with doubt construed against removal. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107-09 (1941).

A case may be removed to federal court only if the case could have been brought originally in federal court pursuant to the court's diversity or federal question jurisdiction. *See* 28 U.S.C. § 1441(a). However, diversity will not support removal jurisdiction if any properly joined defendants are citizens of the state in which the suit was originally filed. *See* 28 U.S.C. § 1441(b). The determination of whether federal jurisdiction exists must be made on the face of

the plaintiff's well-pleaded complaint.  *Pacheco De Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998).  An anticipated or even inevitable federal defense generally will not support removal.  *Id.* at 1373 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392-93 (1987)).  The burden of establishing federal jurisdiction is placed on the defendant, with all doubts resolved in favor of remand, *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996).  When multiple defendants are involved, all defendants must consent to removal.  *Russell Corp.*, 264 F.3d at 1050.

**ARGUMENTS**[16]

**I.     Plaintiff's Motion.**

> **A.     Plaintiff Has Affirmatively Disclaimed Any Federal Cause of Action in Her Complaint.**

Plaintiff contends that she intentionally did not plead federal causes of action in her complaint and does not seek to recover on the basis of any federal law.  Plaintiff highlights paragraph 28 of her complaint.  *See supra.*  According to plaintiff, whether a case arises under federal law is determined by the "well-pleaded" complaint rule— "a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution."  *Beneficial Nat. Bank v. Anderson,* 539 U.S. 1, 6 (2003) (citations omitted).  In other words, plaintiff contends, a case "may be removed based on federal question jurisdiction 'only when the plaintiff's statement of his own cause of action shows that it is based' on federal law."  *Blab T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc.,* 182 F.3d 851, 854 (11th Cir. 1999) (citations omitted).

---

[16] This section summarizes the arguments made by the parties and does not necessarily reflect the conclusions reached by the court.

Therefore, plaintiff concludes, "the plaintiff is the 'master of the claim' and may prevent removal by choosing not to plead an available federal claim." *Id.*  Plaintiff contends that, "[a]s a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial*, 539 U.S. at 6.

Plaintiff maintains that a case "arises under" federal law only if federal law "creates the cause of action, or if a substantial disputed issue of federal law is a necessary element of a state law claim." *Pacheco de Perez v. AT & T Co.,* 139 F.3d 1368, 1373 (11th Cir. 1998).  According to plaintiff, "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action[,] and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal." *Pan Am. Petroleum Corp. v. Superior Court of Delaware In and For New Castle County*, 366 U.S. 656, 663 (1961) (citations and punctuation omitted).  Plaintiff argues that the federal right or immunity forming the basis of the claim "must be such that the claim will be supported if the federal law is given one construction or effect and defeated if it is given another." *Dunlap v. G&L Holding Group, Inc.,* 381 F.3d 1285, 1290 (11th Cir. 2004).

Given that she has affirmatively disclaimed any federal causes of action in her complaint, plaintiff concludes, no federal jurisdiction can exist.

>   **B.   Even If Plaintiff Had Not Disclaimed All Federal Causes of Action, Her Claims Do Not Require the Resolution of Any Federal Question.**

According to plaintiff, "the fact that a state claim necessarily turns on a federal issue, or involves construction of a federal law, does not necessarily give rise to a federal question and confer removal jurisdiction on a federal court." *Austin v. American General Finance, Inc.,* 900

F.Supp. 396, 399 (M.D. Ala. 1995) (citing *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 816-17 (1986)).  Instead, plaintiff contends, "there must be a substantial question of federal law in dispute" in order to confer federal question jurisdiction.  *Cook v. Chrysler Credit Corp.*, 174 B.R. 321, 326 (M.D. Ala. 1994).  Consequently, plaintiff argues, the mere fact "that federal law may be the source or basis of the plaintiffs' state-law claims does not support removal."  *Austin,* 900 F.Supp. at 399 (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 109 (1936), for the proposition that "where plaintiff seeks to enforce state statute, fact that federal law laid basis for statute does not confer removal jurisdiction on federal court").

### 1.    None of the Rights Created Under TILA Are an Essential Element of Any of Plaintiff's Claims.

In Count One, plaintiff alleges that defendants failed to disclose fees, finance charges and/or penalties.  Plaintiff points out that, in its Notice of Removal, Ocwen cites Alabama Code § 5-19-6 and contends that the duty of creditors to disclose credit terms is created by the Truth-in-Lending Act ("TILA"), and that there is no duty under Alabama law to make disclosures other than those created by TILA.  According to plaintiff, this legal conclusion is incorrect.

Plaintiff maintains that Alabama Code § 6-5-102 provides an independent state law basis for an action asserting failure to disclose a material fact.  Specifically, Alabama Code § 6-5-102 states:

> Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case.

Plaintiff states that, "[w]here one person has superior knowledge of a fact and suppression of that fact will induce another person to take action that he or she otherwise would not take, the

9

obligation to disclose is particularly compelling." *Life Ins. Co. of Georgia v. Parker,* 706 So.2d 1108, 1112 (Ala. 1997) (citing *Dominick v. Dixie Nat'l Life Ins. Co.*, 809 F.2d 1559 (11th Cir.1987)). According to plaintiff, factors considered by Alabama courts in determining whether a duty to disclose exists are: "(1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiff's opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances." *Carter v. Chrysler Corp.*, 743 So.2d 456, 460 (Ala. Civ. App. 1998) (citing *State Farm Fire and Cas. Co. v. Owen*, 729 So.2d 834, 842-43 (Ala. 1998)). Plaintiff asserts that these factors provide the basis for her claim. Accordingly, plaintiff contends, defendants had a duty, independent of any federal law, to disclose all material facts with respect to the transaction at issue. *See, e.g. Parker,* 706 So.2d at 1112 (holding that insurer, who had superior knowledge, had a duty to disclose to insured policy terms and details even though such terms and details were found on the face of the documents).

Plaintiff further disputes Ocwen's contention that Alabama Code § 5-19-6 absolves a creditor from any liability for failure to disclose a material fact as long as the creditor has made the required TILA disclosures. Alabama Code § 5-19-6 states:

> No disclosures are required by <u>this chapter</u> to be made by a creditor with respect to any transaction other than disclosures required by regulations made by the administrator pursuant to Section 5-19-21 and disclosures required by subsection (a) above and by Sections 5-19-12(a) and 5-19-20(e).

Alabama Code § 5-19-6(b) (emphasis added). Plaintiff asserts that this section does not apply to her claims. Further, plaintiff argues, this statute does not, and has never been held to, absolve a creditor from liability for fraudulent suppression outside of TILA's requirements.

Plaintiff highlights *Ex parte Ford Motor Credit Co.,* 717 So.2d 781 (Ala. 1997), where a

consumer brought an action against a creditor for fraudulent suppression.  In that case, the

defendant argued that since TILA and "Alabama's consumer protection legislation, the Alabama

Mini-Code, § 5-19-1 to -32" did not impose a duty to disclose certain information to a consumer,

the consumer could not maintain a claim for suppression.  717 So.2d at 785.  The Alabama

Supreme Court disagreed, stating:

> A duty on the part of one to disclose a material fact to another may be based on
> either a statute or the common law. In this case, there was no statutory duty to
> disclose the existence of the commission agreement. Neither the Alabama
> Mini-Code nor the Federal Truth-in-Lending Act requires such a disclosure.
> However, those statutes do not prohibit such a duty from arising from the
> common law. Thus, we must determine whether the particular facts and
> circumstances of this case, viewed in a light most favorable to Bramlett, create a
> common law duty to disclose.

*Id.* at 786 (footnote omitted) (emphasis added).  Given this case law, plaintiff argues, it is clear

that the duty of defendants to disclose certain material facts to plaintiff can and does arise under

state law, independently of any federal law.

According to plaintiff, she is not claiming a violation of usury law and, therefore, her

claims do not fall under either the Mini-Code or TILA.  Plaintiff contends that she is not

asserting that the interest rate reflected in her loan documents was excessive or in violation of the

Mini-Code or any other usury law (such as HOLA).  Therefore, plaintiff concludes, the Mini-

Code and its provisions do not apply to this action.

Plaintiff argues that Count One, when read in its entirety, expressly and repeatedly alleges

a failure to disclose which is actionable under the statutory and common laws of Alabama.

Plaintiff contends that the rights conferred under TILA do not constitute any essential element of

these claims.

### 2.   None of the Rights Created Under FDCPA Are an Essential Element of Plaintiff's Claims.

Plaintiff notes that, in its Notice of Removal, Ocwen asserts that the duty not to "harass, oppress, or abuse" a person is created by the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e(4).  According to plaintiff, Ocwen argues that, since plaintiff has claimed that defendants harassed her, she has made a claim under FDCPA.  Plaintiff denies that she is making a claim under FDCPA.  Plaintiff notes that her complaint clearly states that she is seeking to recover for the intentional infliction of emotional distress caused by defendant's harassment.

Plaintiff points out that a person may recover under the tort of outrage in Alabama by proving: "(1) that the defendants either intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from their conduct; (2) that the defendants' conduct was extreme and outrageous; and (3) that the defendants' conduct caused emotional distress so severe that no reasonable person could be expected to endure it."  *Callens v. Jefferson County Nursing Home*, 769 So.2d 273, 281 (Ala. 2000).  Accordingly, plaintiff concludes, Alabama law clearly provides an independent state law cause of action for harassing behavior by a defendant.  In addition, plaintiff argues, her claims of harassment may also support a claim of nuisance.  *See* Ala. Code § 6-5-120 (stating, "[a] 'nuisance' is anything that works hurt, inconvenience or damage to another"); *Tipler v. McKenzie Tank Lines,* 547 So.2d 438, 440 (Ala. 1989) (stating that a nuisance may consist of conduct that is intentional, unintentional, or negligent).

### C.   Even if Plaintiff Had Not Disclaimed All Federal Causes of Action, Plaintiff's State Law Claims Are Not Preempted by HOLA.

Plaintiff notes that Ocwen, in its Notice of Removal, contends that HOLA completely

12

preempts plaintiff's allegations that defendants charged excessive finance charges.  According to

plaintiff, the mere preemptive effect of a federal statute does not provide a basis for removal.  *See*

*Beneficial Nat. Bank v. Anderson,* 539 U.S. 1, 6 (2003) (stating, "absent diversity jurisdiction, a

case will not be removable if the complaint does not affirmatively allege a federal claim"); *Blab*

*T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc.,* 182 F.3d 851, 854-55 (11th Cir.

1999) (distinguishing complete preemption from ordinary preemption).  Plaintiff points out that

"complete preemption functions as a narrowly drawn means of assessing federal removal

jurisdiction, while ordinary preemption operates to dismiss state claims on the merits and may be

invoked in either federal or state court." *Blab T.V.*, 182 F.3d at 854-55.  Plaintiff highlights the

following passage from *Hooper v. Albany International Corp.*, 149 F.Supp.2d 1315 (M.D. Ala.

2001):

> The doctrine of complete preemption is distinguished from a simple defense of
> preemption in that simple preemption is a question of whether a defense is
> available under federal law, while complete preemption is a jurisdictional
> question which focuses on Congress' intent to make the cause of action a federal
> cause of action and removable despite the fact that the plaintiff's complaint
> identifies only state claims.

149 F.Supp.2d at 1320.

Plaintiff argues that the complete preemption doctrine is an exception to the well-pleaded

complaint rule.  *Aetna Health Inc. v. Davila,* 124 S.Ct. 2488, 2495 (2004).  However, plaintiff

asserts, "[t]he doctrine is a narrow one, applying only when the pre-emptive force of a statute is

so extraordinary that it converts an ordinary state common-law complaint into one stating a

federal claim." *United States Aviation Underwriters, Inc. v. Yellow Freight System, Inc.,* 296

F.Supp.2d 1322, 1337 (S.D. Ala. 2003) (internal quotation marks omitted) (quoting *Caterpillar*

*v. Williams*, 482 U.S. 386, 393 (1987)).  *See also Blab T.V.,* 182 F.3d at 856 (stating, "although the Supreme Court recognizes the existence of the complete preemption doctrine, the Court does so hesitatingly and displays no enthusiasm to extend the doctrine into areas of law beyond the LMRA[, Labor Management Relations Act,] and ERISA[, Employment Retirement Income Security Act]").  According to plaintiff, a federal statute is completely preemptive when it provides the exclusive cause of action for the claims brought by a plaintiff.  *Beneficial*, 539 U.S. at 9.  Thus, plaintiff concludes, while a federal statute may preempt some state law claims and provide a defendant with a defense to such claims, the same federal statute does not necessarily completely preempt a cause of action and make removal permissible.

First, plaintiff argues, HOLA has not been recognized to completely preempt state law causes of action.  In fact, plaintiff contends, "the Supreme Court has identified only three statutes that completely preempt related state-law claims: (1) § 301 of the Labor Management Relations Act, 29 U.S.C. § 185; (2) § 1132 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.; and (3) §§ 85 and 86 of the National Bank Act, 12 U.S.C. § 21 et seq." *Dunlap v. G&L Holding Group, Inc.*, 381 F.3d 1285, 1291 (11th Cir. 2004).  *See also* 12 CFR § 560.2(c) (stating, "State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations . . . (1) Contract and commercial law; . . . (4) Tort law . . .").

Second, plaintiff argues, there is no claim in her complaint that the interest rate charged to her is usurious.  Plaintiff maintains that she is asserting that the interest rate charged to her was not the rate she agreed upon and/or was not the rate that was properly chargeable to her pursuant to her loan documents.  Plaintiff emphasizes that she is not claiming that the interest rate

14

reflected in her loan documents or agreed upon was excessive in violation of HOLA.

Plaintiff acknowledges that any amounts charged and/or collected from her in excess of those allowed by the loan documents or those agreed upon are excessive. However, plaintiff maintains, she does not claim that the rates were excessive in and of themselves. Rather, she argues, they were excessive by virtue of the fact that they were not allowed to be charged pursuant to her agreement with defendants. Plaintiff draws the court's attention to her complaint and notes that it does not contain any allegations of usury.

Plaintiff highlights *McKenzie v. Ocwen Federal Bank FSB,* 306 F.Supp.2d 543 (D. Md. 2004), a recent case in which Ocwen also argued that HOLA completely preempts state law causes of action in support of its removal of a state court action. Plaintiff notes that the *McKenzie* court rejected Ocwen's argument and remanded the case to state court. 306 F.Supp.2d at 546-47. In *McKenzie*, the plaintiff filed a complaint in state court alleging that Ocwen had violated various Maryland statutes regarding loans and had breached its contract by "add[ing] fees and charges to the Plaintiff's account that are neither permitted by the loan agreement including some that are specifically prohibited by applicable law." *Id.* at 544. Ocwen filed a notice of removal based on both diversity and federal question jurisdiction. *Id.* The *McKenzie* plaintiff filed a motion to remand, claiming that the district court had neither diversity nor federal question jurisdiction. *Id.* Ocwen argued that HOLA and its relevant regulations preempted "all state laws purporting to regulate or limit mortgage servicing fees imposed by federally chartered banks." *Id.* at 545. However, the *McKenzie* court held that, while HOLA may preempt the state laws on which the plaintiff relied, it did not provide an exclusive cause of action and, thus, removal was not justified. *Id.* at 546.

15

Additionally, plaintiff argues, various federal courts in Alabama have held that similar complaints to the one at issue here filed by other plaintiffs against Ocwen and others do not confer federal jurisdiction.  Plaintiff has submitted copies of remand orders in the following Northern District of Alabama cases: *Harold and Judy Collins v. Ocwen Federal Bank, FSB, et al.*, CV-04-J-2811-S; and *Sybile Lilly v. Ocwen Federal Bank FSB, et al.*, CV-04-J-2829-S.  She has also submitted copies of remand orders in the following Middle District of Alabama cases: *Ethel Mae Davis v. Ocwen Federal Bank, FSB, et al.*, CV04-902; *Patricia R. Kelley v. Ocwen Federal Bank, FSB, et al.*, CV04-900; and *Debbie L. Long v. Ocwen Federal Bank, FSB et al.*, CV05-126.  Finally, plaintiff has submitted remand orders from the following Southern District of Alabama cases*: Robert and Jennifer Akridge v. Ocwen Federal Bank, FSB, et al.*, CV-04-826; *Roy Capers v. Ocwen Federal Bank, FSB, et al.*, CV-04-626; *Willie Mae Washington v. Ocwen Federal Bank, FSB, et al.*, CV-04-620; and *Cheryle Williams v. Ocwen Federal Bank, FSB, et al.*, CV-04-627.

Plaintiff further argues that Ocwen's contention that "state law claims against federally chartered financial institutions premised on allegations of excessive finance and other charges are completely preempted and removable to federal court," (Notice of Removal ¶ 8), is exaggerated.  In support of this position, Ocwen cites *Beneficial Nat. Bank v. Anderson,* 539 U.S. 1 (2003).  However, plaintiff contends, *Beneficial* did not reach this conclusion.  *See, e.g. McKenzie v. Ocwen Federal Bank FSB,* 306 F.Supp.2d 543, 545 (D. Md. 2004) (stating that *Beneficial*'s holding is not so broad as to support Ocwen's assertions that "consumer claims instituted in state court that challenge regulated practices of federally chartered financial institutions are subject to removal").

16

Plaintiff notes that the Court in *Beneficial* discussed complete preemption as it relates to sections 85 and 86 of the National Bank Act.  According to plaintiff, these two sections address the limits on interest rates that national banks may charge, and prescribe remedies to borrowers who are charged higher rates than allowed.  *Beneficial*, 539 U.S. at 9.  Plaintiff maintains that interest rate limits are not at issue in the present case.  In addition, plaintiff asserts, the National Bank Act does not govern Ocwen's activities with respect to her loan.  Thus, plaintiff concludes, the Court's holding in *Beneficial* regarding complete preemption under the National Bank Act does not extend to this action.[17]

## II.   Defendants' Response.

### A.   The Court Should Defer Consideration of Plaintiff's Motion Pending the Final Transfer of this Action to the Multidistrict Proceedings Currently Pending Before Judge Norgle.

Given the Panel's recent transfer orders, Ocwen argues, it is all but certain that the Panel

---

[17] Plaintiff requests that the court award her costs and fees associated with the removal of this case pursuant to 28 U.S.C. § 1447(c), which states in part:

> An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.

In support of this request, plaintiff argues that Ocwen removed this action even though the complaint specifically disclaims any federal cause of action.  Further, plaintiff asserts, Ocwen removed this case with the knowledge that nine other cases asserting the same type of claims against Ocwen in Alabama have been remanded based on the fact that no federal jurisdiction exists.

Ocwen argues that, in light of the well-established grounds for removal shown it its response brief, plaintiff's request for attorneys' fees should be denied.  *See Grace v. Interstate Life & Accident, Ins. Co.,* 916 F.Supp. 1185, 1192 (M.D. Ala. 1996) (denying request for attorney's fees where "removal jurisdiction was not 'patently lacking' because the issue of whether diversity jurisdiction or, alternatively, federal question jurisdiction, exists is far from a simple determination").

will approve this action for final transfer to MDL No. 1604.  Ocwen contends that it is plainly

inappropriate, in these circumstances, for near-identical remand motions to be resolved

simultaneously by different judges in different jurisdictions.  Ocwen maintains that remand

motions are pending in each of the 11 actions that have been finally transferred to the Northern

District of Illinois.  Ocwen further states that there are remand motions pending in three of the

identical actions stayed by Alabama federal judges, pending the Panel's decision.  According to

Ocwen, these recent developments demonstrate that, rather than rule on plaintiff's remand

motion, this court should stay these proceedings in order to effectuate the MDL Panel's decision

that these and other similar remand motions should be decided on a consolidated basis by a

single federal court in the Northern District of Illinois.[18]

   Ocwen contends that the consolidated review of all the identical remand motions is

clearly preferable.  According to Ocwen, courts have recognized that the "general rule is for

federal courts to defer ruling on pending motions to remand in MDL litigation until after the

JPMDL has transferred the case to the MDL panel."  *Jackson ex rel. Jackson v. Johnson &*

*Johnson, Inc.*, 2001 WL 34048067 at *6 (W.D. Tenn. 2001).  Ocwen notes that district courts in

Alabama have also recognized the prudence in "transfer[ring] motions to remand along with the

case to a Multidistrict litigation panel."  *Gould v. National Life Ins. Co.,* 990 F.Supp. 1354, 1362

(M.D. Ala. 1998) (citing *Adams v. The Prudential Ins. Co.*, No. 97-S-814-N (M.D. Ala. July 30,

1997)).  Accordingly, Ocwen argues, when the question of remand is common across multiple

cases proposed for transfer, courts will defer ruling on the issue of remand in deference to the

---

[18] The MDL Panel has repeatedly advised this court that it retains jurisdiction when there
has been only a conditional transfer.

impending transfer order. *See, e.g., In re Ivy*, 901 F.2d 7, 9 (2nd Cir. 1990) (stating that, where a "jurisdictional issue in question is easily capable of arising in hundreds or even thousands of cases in district courts throughout the nation", transferring cases with their pending remand motions serves "[c]onsistency as well as economy"); *Boudreaux v. Metropolitan Life Ins. Co.*, 1995 WL 83788 at *2 (E.D. La. 1995) (stating, "[b]ecause the issue involved in this remand motion is likely to be common to other transferred cases, the policies of efficiency and consistency of pre-trial rulings are furthered by a stay of the proceedings in this Court pending a decision on the conditional transfer order"). *See also Bd. of Trustees of Teachers' Retirement Sys. of State of Illinois v. Worldcom, Inc.*, 244 F.Supp.2d 900, 905 (N.D. Ill. 2002) (stating, "[t]he question, then, is whether other courts are facing or are likely to face similar jurisdictional issues in cases that have been or may be transferred to a multidistrict proceeding"); *Knearem v. Bayer Corp.,* 2002 WL 1173551 at * 1-2 (D. Kan. 2002) (granting stay pending resolution of conditional transfer to avoid inconsistent rulings regarding amount-in-controversy jurisdictional requirement); *Meyers v. Bayer AG,* 143 F.Supp.2d 1044, 1053 (E.D. Wis. 2001) (stating, "[b]ecause as eight other cases present the same or a similar issue [of federal question jurisdiction] as is presented here, judicial economy clearly favors a stay").

According to Ocwen, this action is essentially a carbon copy of the 11 actions already transferred to the Northern District of Illinois, and the issues raised by plaintiff's motion to remand are identical to those raised in the other remand motions filed by plaintiff's counsel. For instance, Ocwen notes, because each complaint shares the same 12 causes of action, questions involving whether federal question jurisdiction exists are plainly common across all the cases. *See Moore v. Wyeth-Ayerst Laboratories,* 236 F.Supp.2d 509, 511-12 (D. Md. 2002) (granting

19

stay and deferring consideration of motion to remand pending MDL transfer because of common issues regarding the existence of diversity jurisdiction); *Weinke v. Microsoft Corp.*, 84 F.Supp.2d 989, 989-90 (E.D. Wis. 2000) (deferring consideration of motion to remand pending MDL transfer when defendant represented that over 50 similar actions had been filed, 18 of which involved motions to remand).

Finally, Ocwen asserts that stays have already been granted in three of the identical actions, and that motions to remand remain to be decided in the 11 actions already transferred to Judge Norgle in the Northern District of Illinois.  Therefore, Ocwen concludes, Judge Norgle will soon have to decide more than a dozen identical remand motions.[19]  To prevent unnecessary waste of judicial resources, Ocwen argues, these shared jurisdictional issues should be decided at the same time by the same court.  *See Bd. of Trustees of Teachers' Retirement Sys. of State of Illinois v. Worldcom, Inc.*, 244 F.Supp.2d 900, 905 (N.D. Ill. 2002) (stating, "[h]aving one court rather than three decide complex jurisdictional issues obviously saves judicial resources").

**B.      Plaintiff's Claims are Subject to Federal Question Jurisdiction.**

**1.      Plaintiff's Complaint is Subject to Removal Under the Complete Preemption Doctrine.**

It is Ocwen's position that the complaint here is subject to removal under the doctrine of complete preemption as discussed in *Beneficial National Bank v. Anderson*, 539 U.S. 1 (2003). As a threshold matter, Ocwen argues, plaintiff's attempt to waive federal claims has no effect on

---

[19] According to Ocwen, this statement is made under the assumption that the plaintiffs will continue to pursue remand once the actions are transferred.  Ocwen points out that the consolidated complaint pending in the Northern District of Illinois asserts both state- and federal-law claims on behalf of a purported nationwide class that includes all Ocwen borrowers in Alabama and Mississippi.  Ocwen notes that it is possible that the plaintiffs involved will elect to join the consolidated complaint.

the removability of state law claims that are completely preempted under *Beneficial*.  While

plaintiff may not be specifically seeking relief based on federal causes of action, Ocwen states,

the effect of the complete preemption doctrine is to convert her state law claims to federal claims

as a matter of law.  Ocwen notes that the Eleventh Circuit has stated that, when a state law claim

is completely preempted by federal law, it "is <u>transformed</u> into a claim 'arising under' federal

law." *Dunlap v. G&L Holding Group, Inc.*, 381 F.3d 1285, 1290 (11th Cir. 2004) (emphasis

added).  Thus, Ocwen asserts, under the doctrine of complete preemption, "[w]hen the federal

statute completely pre-empts the state-law cause of action, a claim which comes within the scope

of that cause of action, even if pleaded in terms of state law, is in reality based on federal law."

*Beneficial*, 539 U.S. at 8.  *See also Dunlap*, 381 F.3d at 1290 (stating, "even when a plaintiff has

pled only state-law causes of action, he may not avoid federal jurisdiction if either (1) his

state-law claims raise substantial questions of federal law or (2) federal law completely preempts

his state-law claims").  Accordingly, Ocwen concludes, plaintiff's attempt to disclaim any federal

cause of action is of no avail because the preemptive effect of HOLA converts plaintiff's claims

regarding excessive finance charges into federal claims as a matter of law.

Ocwen acknowledges that the preemptive effect of HOLA has not yet been explicitly

recognized.  However, Ocwen argues, Supreme Court precedent clearly demonstrates that HOLA

satisfies the established requirements for complete preemption.  Ocwen relies on the outcome of

*Beneficial* to support this argument.  Prior to *Beneficial*, Ocwen notes, the Supreme Court had

expressly found complete preemption only with respect to claims under ERISA and the LMRA.

Therefore, according to Ocwen, the Eleventh Circuit held that these two areas of law were the

outer limits of the complete preemption doctrine.  *See Anderson v. H&R Block, Inc,* 287 F.3d

1038 (11th Cir. 2002), *rev'd sub nom. Beneficial Nat. Bank v. Anderson*, 539 U.S. 1 (2003).

However, in *Beneficial*, Ocwen notes, the Supreme Court reversed the Eleventh Circuit's

determination that provisions of the National Bank Act did not completely preempt the plaintiff's

parallel state law claims.  According to Ocwen, *Beneficial* makes it clear that the complete

preemption doctrine, while limited, applies generally where (1) federal preemption exists and (2)

there is an available federal remedy that evidences Congressional intent that the remedy be

exclusive.

Ocwen notes that, in *Beneficial*, the plaintiff brought claims against a national bank,

alleging, among other things, excessive interest rates.  539 U.S. at 4.  The bank argued that these

claims were completely preempted by sections 85 and 86 of the National Bank Act.  Section 85

provides in part:

> Any association may . . .  charge on any loan or discount made . . . interest at the
> rate allowed by the laws of the State, Territory, or District where the bank is
> located, or at a rate of 1 per centum in excess of the discount rate on ninety-day
> commercial paper in effect at the Federal reserve bank in the Federal reserve
> district where the bank is located, whichever may be the greater. . . .

12 U.S.C. § 85.  Section 86 states:

> The taking, receiving, reserving, or charging a rate of interest greater than is
> allowed by section 85 of this title, when knowingly done, shall be deemed a
> forfeiture of the entire interest which the note, bill, or other evidence of debt
> carries with it, <u>or which has been agreed to be paid thereon</u>. In case the greater
> rate of interest has been paid, the person by whom it has been paid, or his legal
> representatives, may recover back, in an action in the nature of an action of debt,
> twice the amount of the interest thus paid from the association taking or receiving
> the same: Provided, That such action is commenced within two years from the
> time the usurious transaction occurred.

12 U.S.C. § 86 (emphasis added).  Ocwen highlights the following passage from *Beneficial*:

> If, as petitioners asserted in their notice of removal, the interest that the bank

22

> charged to respondents did not violate § 85 limits, the statute unquestionably
> pre-empts any common-law or Alabama statutory rule that would treat those rates
> as usurious. The section would therefore provide the petitioners with a complete
> federal defense. Such a federal defense, however, would not justify removal.
> Only if Congress intended § 86 to provide the exclusive cause of action for usury
> claims against national banks would the statute be comparable to the provisions
> that we construed in the *Avco* [LMRA] and *Metropolitan Life* [ERISA] cases.

539 U.S. at 9 (citations omitted).  Ocwen observes that the Court noted the "special nature of

federally chartered banks," and held that the National Bank Act did provide the exclusive cause

of action for usury against a national bank.  *Id.* at 10-11.  The Court stated, "[u]niform rules

limiting the liability of national banks and prescribing exclusive remedies for their overcharges

are an integral part of a banking system that needed protection from 'possible unfriendly State

legislation.'" *Id.* at 10 (quoting *Tiffany v. National Bank of Mo.*, 18 Wall. 409, 412, 21 L.Ed. 862

(1874)).  Ocwen asserts that the Court reiterated that this complete preemption would provide a

basis for removal "even when a state complainant, as here, relies entirely on state law."  *Id.* at 11.


     According to Ocwen, this case is identical to *Beneficial*, with the sole difference being

that the action is asserted against a savings association chartered by the United States pursuant to

12 U.S.C. § 1464 instead of a national bank chartered under 12 U.S.C. § 27.  Ocwen argues that

HOLA, the statute pursuant to which federal savings associations like itself are regulated, is

intentionally parallel and similar to the National Bank Act examined in *Beneficial.*  For the same

reasons that justified removal in *Beneficial,* Ocwen contends, removal is proper here under the

complete preemption doctrine.

     First, Ocwen maintains, HOLA features language substantially identical to sections 85

and 86 of the National Bank Act.  Ocwen highlights the following passages:

| HOLA | National Bank Act |
|---|---|
| "Notwithstanding any State law, a savings association may charge interest on any extension of credit at a rate of not more than 1 percent in excess of the discount rate on 90-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district in which such savings association is located or at the rate allowed by the laws of the State in which such savings association is located, whichever is greater."  12 U.S.C. § 1463(g)(1). | "Any association may . . . charge on any loan or discount made . . . interest at the rate allowed by the laws of the State, Territory, or District where the bank is located, or at a rate of 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater . . ."  12 U.S.C. § 85. |
| ". . . If such greater rate of interest has been paid, the person who paid it may recover, in a civil action commenced in a court of appropriate jurisdiction not later than 2 years after the date of such payment, an amount equal to twice the amount of the interest paid from the savings association taking or receiving such interest."  12 U.S.C. § 1463(g)(2). | ". . . In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same: *Provided*, That such action is commenced within two years from the time the usurious transaction occurred."  12 U.S.C. § 86 (emphasis in original). |

Second, Ocwen contends that the "special nature" of federally chartered thrifts is equally as well-recognized as the special status afforded to national banks.  Through HOLA, Ocwen notes, Congress delegated to the Office of Thrift Supervision ("OTS") authority to regulate the lending and investment practices of federal savings associations – just as the Office of the

24

Comptroller of the Currency supervises the activities of National Banks under the National Bank Act.  *See* 12 U.S.C.A. § 1464(a) (discussing role of director).  *See also Fidelity Federal Savings and Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 161-62 (1982) (discussing authority of the Federal Home Bank Board to regulate federal savings and loans under HOLA).  Under that authority, Ocwen asserts, OTS has issued comprehensive and expansive regulations governing the operation of federal thrifts.  12 C.F.R. § 560.1, *et seq.*  These regulations state in part:

> OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities . . .  For purposes of this section, "state law" includes any state statute, regulation, ruling, order or judicial decision.

12 C.F.R. § 560.2(a).  Ocwen notes that subsection (b) of 12 C.F.R. § 560.2 goes on to provide a list of "[i]llustrative examples" of the types of state laws preempted by subsection (a).  This list includes, among others, state laws purporting to impose requirements regarding: "[l]oan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees," and "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages."  12 C.F.R. § 560.2(b)(5) and (10).

Ocwen points out that the Ninth Circuit has found that the "regulation of federal savings associations by the OTS has been so pervasive as to leave no room for state regulatory control." *Bank of America v. City and County of San Francisco,* 309 F.3d 551, 558 (9th Cir. 2002) (internal quotation marks and citation omitted).  According to Ocwen, the preemptive scope of these regulations has been interpreted quite broadly, and few areas of business activity are as

pervasively regulated by federal law as the banking and thrift industry.  Ocwen highlights the

following passage from *Bank of America*:

> Congress has legislated in the field of banking from the days of *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 325-26, 426-27, 4 L.Ed. 579 (1819), creating an extensive federal statutory and regulatory scheme. The history of national banking legislation has been "one of interpreting grants of both enumerated and incidental 'powers' to national banks as grants of authority not normally limited by, but rather ordinarily pre-empting, contrary state law." *Barnett Bank v. Nelson*, 517 U.S. 25, 32, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996) (citations omitted). Indeed, since the passage of the National Bank Act in 1864, the federal presence in banking has been significant. *See id.* at 32-33, 116 S.Ct. 1103. <u>Similarly, since the passage of the HOLA in 1933, OTS regulations have governed the "powers and operations of every federal savings and loan association from its cradle to its corporate grave</u>." *de la Cuesta*, 458 U.S. at 145, 102 S.Ct. 3014, *quoting People v. Coast Fed. Sav. & Loan Ass'n*, 98 F.Supp. 311, 316 (S.D.Cal.1951).

309 F.3d at 558 (emphasis added).  Ocwen contends that the purpose of HOLA was to eliminate

the "hodgepodge" of inconsistent state savings and loan regulations, with the intent that a

uniform, federally regulated thrift industry would overcome problems that had arisen under the

old system of state-by-state regulation.  *Eureka Federal Savings and Loan Ass'n v. Kidwell,* 672

F.Supp. 436, 439 (N.D. Cal. 1987).  *See also Bank of America,* 309 F.3d at 559 (stating,

"Congress enacted the HOLA as a result of its dissatisfaction with state regulation of home

financing").

Thus, Ocwen concludes, there is no reason for this court to treat the complete preemptive

effect of HOLA and its implementing regulations any different from the treatment the Supreme

Court accorded virtually identical statutory provisions of the National Bank Act in *Beneficial*.

Just as claims for excessive finance charges against a national bank are always removable to

federal court, Ocwen argues, so are claims for excessive finance charges against a federally

chartered thrift.  To hold otherwise, Ocwen contends, would work an illogical and unprincipled

inconsistency with the Supreme Court's decision in *Beneficial*.

According to Ocwen, other than noting that the Supreme Court has yet to decide whether HOLA completely preempts related state law claims, plaintiff has made no attempt to refute the preemptive effect of the relevant provisions of HOLA.  Ocwen contests plaintiff's reliance on *McKenzie v. Ocwen Federal Bank FSB,* 306 F.Supp.2d 543 (D. Md. 2004), in which a district court remanded claims against Ocwen to state court.  Ocwen contends that *McKenzie* involved different provisions of HOLA than those relevant here.  In that case, Ocwen asserts, the claims at issue involved mortgage servicing fees, and there was no allegation that excessive interest was charged, as there is here.  Therefore, Ocwen argues, the *McKenzie* court did not have occasion to review the provisions of 12 U.S.C. § 1463(g), the federal thrift analog to sections 85 and 86 of the National Bank Act.  As such, Ocwen concludes, *McKenzie* is despositively different from this case, as this case involves an allegation that was squarely addressed by the *Beneficial* holding.

Ocwen also disputes plaintiff's arguments that complete preemption does not apply because her complaint does not assert any usury claims.  According to Ocwen, plaintiff's argument is flawed because it ignores controlling federal law defining what a usury claim is under HOLA.  In *Beneficial*, Ocwen contends, the Supreme Court held that a reviewing court must look to federal banking law, not state law, for the definition of usury when determining if a plaintiff has asserted a removable usury claim.  *See Beneficial,* 539 U.S. at 10 (citing  *Haseltine v. Central Bank of Springfield*, 183 U.S. 132, 134 (1901), for the proposition that "the definition of usury and the penalties affixed thereto must be determined by the National Banking Act and not by the law of the State").  Since it is a federal savings association, Ocwen concludes, this court must examine the thrift regulations promulgated under HOLA to determine if plaintiff's

27

allegations amount to claims of usury.  According to Ocwen, these regulations make it clear that plaintiff's claims are encompassed within HOLA's definition of usury.

Ocwen notes that HOLA's usury provision, 12 U.S.C. § 1463(g)(2), sets limits on the "interest" that may be charged by federal savings associations like Ocwen.  Ocwen asserts that HOLA's implementing regulations define interest broadly:

> The term "interest" as used in 12 U.S.C. 1463(g) includes any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended. It includes, among other things, the following fees connected with credit extension or availability: numerical periodic rates, late fees, not sufficient funds (NSF) fees, overlimit fees, annual fees, cash advance fees, and membership fees. . . .

12 C.F.R. § 560.110(a).

It is Ocwen's position that plaintiff's complaint contains allegations of usury under HOLA for two reasons.  First, Ocwen maintains, plaintiff's claims directly allege that defendants imposed "otherwise excessive fees, finance charges, and/or penalties."  (Cmplt. ¶ 30) (emphasis added).  Rather than analyzing the definition of usury under applicable federal law, Ocwen contends, plaintiff offers the conclusory explanation that usury claims are not at issue because she is not challenging the "interest rate" as excessive.  However, Ocwen argues, allegations of "excessive . . . finance charges" are claims of usury under HOLA.  Ocwen points to Black's Law Dictionary which defines "finance charge" as "[t]he consideration for privilege of deferring payment of purchase price. . . . [t]he cost of credit."  Black's Law Dictionary (5th ed. 1979), at 568.[20]  Not surprisingly, Ocwen asserts, courts have held that allegations of "excessive finance

---

[20] The most current edition of Black's Law Dictionary defines "finance charge" as:

> An additional payment, usu[ally] in the form of interest, paid by a retail buyer for

charges" are the same as allegations of excessive interest within the meaning of HOLA's usury

provision.  Ocwen draws the court's attention to *Cappalli v. Nordstrom FSB,* 155 F.Supp.2d 339

(E.D. Pa. 2001), where the plaintiff challenged the imposition of "late fees" and "finance

charges" by the defendant.  155 F.Supp.2d at 341.  In determining the nature of these charges, the

*Cappalli* court held that "both fees qualify as interest exportable under HOLA § 1463(g) . . ." *Id.*

at 345.  Ocwen argues that here, because plaintiff alleges that defendants imposed excessive

finance charges, she cannot claim that HOLA usury claims are not at issue.

Second, Ocwen continues, plaintiff's claims amount to allegations of usury because she

alleges that defendants imposed "improper or otherwise excessive <u>fees</u>."  (Cmpt. ¶ 30) (emphasis

added).   According to Ocwen, HOLA specifically provides a non-exhaustive list of fees that

qualify as interest for its usury provision.  This list includes fees covering "numerical periodic

rates, late fees, not sufficient funds (NSF) fees, overlimit fees, annual fees, cash advance fees,

and membership fees."  12 C.F.R. § 560.110(a).  It is Ocwen's position that, with the myriad of

fees that qualify as "interest" within the meaning of HOLA's usury provision, plaintiff's

allegations of excessive "fees" puts at issue a usury claim under HOLA.

Not only do fees fall within HOLA's express definition of interest, Ocwen argues, fees

have long been defined as interest by the Supreme Court.  Ocwen draws the court's attention to

*Smiley v. Citibank (South Dakota), N.A.,* 517 U.S. 735 (1996).  In *Smiley*, Ocwen notes, the

Supreme Court rejected plaintiff's argument that "late fees" did not constitute "interest" for

---

the privilege of purchasing goods or services in installments. • This phrase is
increasingly used as a euphemism for interest.

Black's Law Dictionary (8th ed. 2004).

purposes of the National Bank Act's usury provision.  517 U.S. at 745.  The Court explained that

such fees were included in its long-held definition of interest: "'Interest is the compensation

allowed by law, or fixed by the parties, for the use or forbearance of money or as damages for its

detention.'" *Id.* (quoting *Brown v. Hiatts*, 15 Wall. 177, 185, 21 L.Ed. 128 (1873)).  The *Smiley*

Court also cited *Hollowell v. Southern Building & Loan Assn.*, 120 N.C. 286, 26 S.E. 781 (N.C.

1897), for the proposition that "[A]ny charges made against [the borrower] in excess of the

lawful rate of interest, whether called 'fines,' 'charges,' ' dues,' or 'interest,' are in fact interest, and

usurious." *Id*. (brackets in original).  Ocwen concludes that plaintiff's assumption that the term

"usury" excludes excessive fees or finance charges has no foundation in federal banking

regulations or in Supreme Court precedent

> Ocwen next addresses plaintiff's arguments that her allegations are not usury claims

because, rather than arguing that the challenged fees and finance charges exceed a limit imposed

by law, her complaint alleges that such fees and finance charges were assessed in excess of the

amount allowed by plaintiff's loan documents.  Ocwen asserts that this argument contradicts the

text of plaintiff's complaint, which states that the fees and finance charges were not disclosed at

all.  (Cmpt. ¶ 2).  According to Ocwen, if these fees and finance charges had not been previously

disclosed, plaintiff could not have agreed to them, nor could such fees exceed any agreed upon

amount or rate.

> Ocwen concludes that, if the court has any doubt as to the existence of federal question

jurisdiction, it should follow the example of the district court in *Beneficial*, which "denied

respondents' motion to remand the case to state court but certified the question whether it had

jurisdiction to proceed with the case to the Court of Appeals pursuant to 28 U.S.C. § 1292(b)."

*Beneficial*, 539 U.S. at 5.

> **2.    Plaintiff's State Law Claims Implicate Federal Questions that Are Sufficiently Substantial to Confer Federal Question Jurisdiction.**

Ocwen further maintains that removal is proper here because plaintiff's state law claims necessarily require the resolution of substantial federal questions.  *See Ayres v. General Motors Corp.*, 234 F.3d 514, 518 (11th Cir. 2000) (finding federal question jurisdiction when plaintiff's action required "resolution of a substantial, disputed question of federal law").  As a threshold matter, Ocwen asserts, jurisdiction based on a substantial federal question cannot be destroyed by plaintiff's disclaimer of any federal cause of action that may arise from the allegations in the complaint.  Instead, Ocwen maintains, federal courts have consistently held that even causes of action pled entirely under state law are removable if the right to relief under the state law necessarily involves the resolution of a substantial question of federal law.  *See e.g., Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 13 (1983) (stating, "[e]ven though state law creates appellant's causes of action, its case might still 'arise under' the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties"); *Eatmon v. Bristol Steel & Iron Works, Inc.,* 769 F.2d 1503, 1517 (11th Cir. 1985) (finding that,"even though the right and the remedy of appellees' cause of action [were] created by state law, their cause of action, nonetheless, '[arose] under federal law'" because it required interpretation of federal law).

In *Ayres*, Ocwen notes, the Eleventh Circuit upheld removal because an essential element of the plaintiff's cause of action under Georgia's racketeering statute was a violation of the federal mail and wire fraud statutes.  234 F.3d at 518.  Likewise, Ocwen argues, in *Ormet Corp.*

*v. Ohio Power Co.*, 98 F.3d 799 (4th Cir. 1996), an aluminum manufacturer brought an action against an electric utility claiming a contractual right to a proportionate share of the emission allowances issued to the utility by the EPA for a generating station.  The Fourth Circuit found that, while the Clean Air Act did not specifically give rise to a private cause of action governing plaintiff's allegations, "resolution of Ormet's claim requires the determination of substantial federal issues."   98 F.3d at 801-02.  Specifically, the *Ormet* parties disputed whether the plaintiff was properly considered an "owner" within the meaning of the Clean Air Act – a disagreement that would affect the court's interpretation of the parties' contract.  *Id.* at 807.  The *Ormet* court concluded that the "resolution of the dispute requires the interpretation and application of the Act to the contractual arrangement between the parties."  *Id.*

Ocwen next highlights the case of *Drawhorn v. Qwest Communications Intern., Inc.,* 121 F.Supp.2d 554 (E.D. Tex. 2000).  In *Drawhorn*, the plaintiffs brought state law causes of action for trespass, unjust enrichment, slander of title and declaratory relief relating to fiber optic networks installed in easements owned by railroads and public utilities.   121 F.Supp.2d at 556-57.  Ocwen notes that, though the plaintiffs contended that federal jurisdiction was improper since all of the claims were styled as state law causes of action, the court nonetheless found that substantial federal questions warranted removal.  *Id.* at 557-58, 566.  The court found that plaintiff's claim for declaratory relief necessarily implicated a determination of the defendant's rights, which "undoubtedly put[] the interpretation of the federal railroad statutes at issue."  *Id.* at 562.  Similarly, the court found the adjudication of the Texas unjust enrichment claim required that the plaintiff's prove that the defendant had "wrongfully secured a benefit," which the court found would be governed by the federal railroad statutes in question.  *Id.* at 563.

Ocwen argues that, as in the above mentioned cases, this case necessarily entails the resolution of substantial disputed questions of federal law.  For example, Ocwen asserts, plaintiff alleges that defendants failed to disclose "fees, finance charges, and/or penalties in connection with plaintiff's note and mortgage."  (Cmpt. ¶ 30).  Ocwen contends that, even if plaintiff meant to seek relief only under Alabama Code § 6-5-102, that statute requires "[s]uppression of a material fact which the party is under an obligation to communicate."  (Emphasis added).  According to Ocwen, a creditor's duty to disclose fees and finance charges is found in TILA, 15 U.S.C. §1638 *et seq.*  Thus, Ocwen concludes, plaintiff's claim that it or another defendant breached a duty by failing to disclose required information necessarily depends on the existence, scope and breach of that duty, if any, under the federal statute.  This is true, Ocwen maintains, even if the specific remedy plaintiff seeks is created by state law.

Ocwen addresses plaintiff's reliance on *Ex parte Ford Motor Credit Co.,* 717 So.2d 781 (Ala. 1997) to support her argument that defendants' duty to disclose this information is created by Alabama common law.  Ocwen notes that, in  *Ex parte Ford Motor Credit Co.*, a buyer sued a dealership and a credit company for fraudulent suppression, claiming that defendants had a common law duty to disclose to the buyer a commission agreement resulting in a 15.49% interest rate on the buyer's loan contract.  717 So.2d at 784.  The Alabama Supreme Court found that the defendants did not have a common law duty to disclose the commission agreement to the buyer because "[i]t is well settled that, in the absence of a special confidential relationship, the general creditor-debtor relationship does not impose a fiduciary duty requiring such disclosure."  *Id.* at 786-87 (footnote omitted).  Ocwen contends that it is also true in this case that, in the absence of a special relationship or other basis for inferring a common law duty requiring disclosure of the

33

fees and finance charges at issue here, plaintiff cannot assert a claim based on a common law duty.

Ocwen contends that both the statutory and common law of Alabama establish that there is no duty (other than the one created by TILA) to make disclosures concerning a consumer credit transaction.  Accordingly, Ocwen argues, any duty underlying plaintiff's putative fraud claim must arise under TILA.  Ocwen has submitted a copy of *Alison v. Household Finance Corp. of Alabama*, No. 04-0254, slip. op. (S.D. Ala. August 2, 2004).  Ocwen notes that in *Alison*, the court denied plaintiffs' motion to remand because their Alabama fraudulent suppression claim "require[d] resolution of a substantial question of federal law, namely whether defendants' conduct amounted to a violation of the Truth-in-Lending Act."  *Alison*, No. 04-0254 at 4. Accordingly, Ocwen asserts, the *Alison* court found that federal jurisdiction extended to plaintiffs' claim regardless of whether it was pled under Alabama law.  *Id.*

Ocwen next addresses plaintiff's argument that she is not claiming a violation of usury laws and, therefore, her claims do not fall within the scope of TILA.  Ocwen contends that this argument is flawed because the duty created by TILA to disclose credit terms, specifically "finance charges" and "penalties," is not limited to usurious terms.  *See* 15 U.S.C. § 1605(a) (defining "finance charge").  Moreover, Ocwen maintains, plaintiff has included usury claims because she alleges that she was charged excessive fees, finance charges, and/or penalties. (Cmpt. ¶ 30).

According to Ocwen, plaintiff raises a second substantial question of federal law by alleging that defendants "harass[ed] [her] by telephone and mail regarding the status of [her] loan and fees and charges which were being applied to [her] account improperly."  (Cmpt. ¶ 62).

Ocwen notes that plaintiff asserts that this claim states a cause of action for the tort of outrage in Alabama.  However, Ocwen argues, that tort requires proof of extreme and outrageous conduct. Ocwen asserts that FDCPA, 15 U.S.C. § 1692d, creates a duty not to engage in "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," including "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number."  15 U.S.C. § 1692d(5).  Accordingly, Ocwen concludes, any assessment of what constitutes extreme and outrageous conduct on these facts must necessarily hinge on what conduct is and is not permitted under the federal statute.

### III.    Plaintiff's Reply.

#### A.    This Court Should Exercise Its Authority to Rule on this Threshold Jurisdictional Issue.

Plaintiff opposes Ocwen's position that this court should defer ruling on her Motion to Remand pending the potential transfer of this case to the United States District Court for the Northern District of Illinois.  Plaintiff maintains that, contrary to Ocwen's assertions, there is no general rule for federal courts to defer ruling on motions to remand until the MDL Panel has made a decision on transfer.  Plaintiff notes that *Gould v. National Life Ins. Co.,* 990 F.Supp. 1354, 1363 (M.D. Ala. 1998), a case cited by Ocwen, states "the decision whether to decide a remand or a transfer first should be made on the facts of the particular case."  990 F.Supp. at 1363.

Plaintiff notes that, in the 11 similar actions which have been transferred to the Northern District of Illinois, the plaintiffs had already fully briefed the issue of remand before the Alabama

courts prior to the transfer.  Plaintiff contends that, if this case is ultimately transferred, a stay

will not promote judicial economy, as another court will have to address these issues again.

Further, plaintiff points out, the plaintiffs in those cases have been required to request relief from

that court's standing order consolidating the plaintiffs' claims into a purported nationwide class

action based on federal law claims.  This order, according to plaintiff, effectively dismisses the

plaintiffs' state law claims.  The Northern District of Illinois has not yet ruled on the plaintiffs'

request for relief.  Plaintiff maintains that, given the circumstances, transferring this case will

prejudice her in that her claims may be effectively dismissed.  Also, plaintiff asserts, transferring

the case will delay her ability to proceed with her claims against Ocwen and others.

     Although some courts in the similar cases have stayed the remand decision pending the

MDL Panel's determination on transfer, plaintiff argues, in no similar case has remand been

denied.  Plaintiff concludes that there is no need for the Northern District of Illinois to decide a

threshold jurisdictional issue which this court is clearly capable of resolving.

     **B.**      **No Federal Question Jurisdiction Exists.**

     Plaintiff reiterates her argument that all of her claims are based on Alabama state law and

that she has pled no federal causes of action.

             **1.**      **The Plaintiff Has Disclaimed All Federal Causes of Action.**

     Plaintiff reasserts her position that federal question jurisdiction cannot exist because she

has affirmatively disclaimed all federal causes of action.  Plaintiff notes that Ocwen argues that

her waiver of federal claims is not sufficient to prevent removal when complete preemption is

present.  In making this argument, plaintiff observes, Ocwen states that the effect of the complete

preemption doctrine is to convert state law claims into federal law claims as a matter of law.

However, plaintiff contends, if preempted state law claims are technically federal law claims, as

Ocwen asserts, her disclaimer would apply to such claims.  According to plaintiff, Ocwen has

provided no authority in support of its position otherwise.  In addition, plaintiff argues, Ocwen

has provided no relevant authority in support of its position that plaintiff's waiver was ineffective

to prevent removal of claims which involve substantial questions of federal law.

### 2.      HOLA Does Not Preempt the Plaintiff's Claims.

Plaintiff addresses Ocwen's argument that her claims are completely preempted by

federal law, specifically 12 U.S.C. § 1463(g).  Plaintiff notes that 12 U.S.C. § 1463(g) states:

> (1) Notwithstanding any State law, a savings association may charge <u>interest</u> on
> any extension of credit at a rate of not more than 1 percent in excess of the
> discount rate on 90-day commercial paper in effect at the Federal Reserve bank in
> the Federal Reserve district in which such savings association is located or at the
> rate allowed by the laws of the State in which such savings association is located,
> whichever is greater.
>
> (2) If the rate <u>prescribed in paragraph (1)</u> exceeds the rate such savings association
> would be permitted to charge in the absence of this subsection, the receiving or
> charging a greater rate of interest than that prescribed by paragraph (1), when
> knowingly done, shall be deemed a forfeiture of the entire interest which the
> extension of credit carries with it, or which has been agreed to be paid thereon. If
> such greater rate of interest has been paid, the person who paid it may recover, in
> a civil action commenced in a court of appropriate jurisdiction not later than 2
> years after the date of such payment, an amount equal to twice the amount of the
> interest paid from the savings association taking or receiving such interest.

12 U.S.C. § 1463(g) (emphasis added).  Plaintiff disputes Ocwen's claims that these provisions

completely preempt her claims.  Plaintiff reiterates her position that she has not made any claims

of usury.  In any event, plaintiff maintains, HOLA has never been found to completely preempt

state law claims.

### a.      Plaintiff Has Not Made Claims of Usury.

Plaintiff opposes Ocwen's position that her claims of "excessive fees, finance charges, and/or penalties" amount to usury claims. According to plaintiff, she is not asserting that the fees, charges and penalties are excessive in and of themselves. Instead she claims they were in excess of the amounts agreed upon or in addition to those allowed by the applicable loan documents. Plaintiff maintains that she is not alleging that any amounts charged to her were in excess of the amounts allowed to be charged by statute (HOLA or otherwise).

For example, plaintiff contends, her note allows her to be charged a "reasonable attorney's fee" in the event of a default. According to plaintiff, Ocwen has charged her for attorney's fees. Plaintiff asserts that these amounts are excessive in that they are more than what is reasonable. Further, plaintiff asserts, defendants have demanded that payments be made before the due date agreed upon in her note. Plaintiff maintains that such premature charges result in charging her an excessive amount. Plaintiff concludes that these claims are not based on usury, and the question of whether "fees" and "finance charges" are considered "interest" under HOLA is irrelevant. According to plaintiff, if she had chosen to assert claims of usury, which she did not, she would have done so in a separate count that relied on usury laws.

### b.   Complete Preemption Under HOLA Has Never Been Recognized.

Plaintiff disputes Ocwen's position that the present case is similar to the *Beneficial* case. Plaintiff argues that the plaintiffs' complaint in *Beneficial* "sought relief for 'usury violations' and claimed that petitioners 'charged ... excessive interest in violation of the common law usury doctrine' and violated 'Alabama Code. § 8-8-1, et seq. by charging excessive interest.'" *Beneficial Nat. Bank v. Anderson,* 539 U.S. 1, 9 (2003). In contrast, plaintiff argues, in this case,

none of the claims in her complaint make any mention of excessive charges in violation of any sort of usury, common law or statutory.

Even if she had alleged usury claims in her complaint, plaintiff argues, the *Beneficial* holding only applies to lenders governed by the National Bank Act.  According to plaintiff, HOLA, not the National Bank Act, would apply to claims against Ocwen.  HOLA, plaintiff maintains, has never been recognized to completely preempt state law.

Plaintiff again draws the court's attention to *McKenzie v. Ocwen Federal Bank FSB,* 306 F.Supp.2d 543 (D. Md. 2004), where the court rejected Ocwen's argument that HOLA completely preempts state law causes of action.  306 F.Supp.2d at 546-47.  Further, plaintiff argues, it is debatable whether Ocwen's actions with respect to her loan even fall within the provisions of HOLA, as Ocwen merely services her note for a separate entity and does not hold the document.

### 3.   Plaintiff's Claims Do Not Require the Resolution of Federal Questions.

### a.   TILA Is Not Implicated by Plaintiff's Claims.

Plaintiff reasserts her argument that a duty by a lender to disclose certain facts can arise under Alabama Code § 6-5-102, independent of any federal law.  Plaintiff contests Ocwen's reliance on *Ex parte Ford Motor Credit Co.,* 717 So.2d 781 (Ala. 1997), for the proposition that there is no duty for a creditor to disclose any material facts to a customer under Alabama law. According to plaintiff, the *Ford* court did not hold that creditors never have a duty of disclosure information to consumers under state law.  Rather, plaintiff asserts, the court found that, in that case, there were no circumstances which would confer such a duty.  Plaintiff notes that *Ford*

involved a creditor who did not disclose the terms of a commission agreement with a financing company.  Plaintiff maintains that the *Ford* holding does not extend beyond the facts of that case, and Ocwen has not shown the absence of a duty in the present case.

### b.      Plaintiff's Claims Do Not Implicate FDCPA.

Plaintiff disputes Ocwen's arguments that FDCPA provides the only measure of what conduct is considered "extreme and outrageous."  According to plaintiff, this determination does not depend upon FDCPA, but is based on what a jury finds extreme and outrageous.  Under Alabama state law, plaintiff observes, in order to recover for the tort of outrage, a plaintiff must show that the defendant's conduct was "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Jenkins v. U.S. Fidelity and Guar. Co.,* 698 So.2d 765, 768 (Ala. 1997) (citations omitted).  Plaintiff asserts that none of these requirements depend on what conduct is permitted under FDCPA and, therefore, do not require the resolution of substantial federal questions.

### c.      Other Courts Addressing Similar Matters Have Concluded that These Claims Do Not Substantially Implicate Federal Questions.

According to plaintiff, in several other cases, Ocwen has raised the issue of whether claims similar to hers involve substantial questions of federal law such as to implicate federal jurisdiction.  Plaintiff highlights the 9 orders from other district court cases which she submitted with her Motion to Remand.  Plaintiff maintains that in all the cases in which the issue has been addressed, the courts have held that these claims do not implicate federal jurisdiction.

### CONCLUSIONS OF THE COURT

40

The defendants do not claim that there is diversity jurisdiction.  Furthermore, the defendants do not claim that the plaintiff has directly asserted any claim under the Constitution of the United States or under any federal statute.  The only purported bases for federal jurisdiction are: (1) super preemption with respect to HOLA; and (2) the argument that substantial disputed issues of federal law must be decided relative to purported state law claims.

Super Preemption:

The plaintiff states that she has not stated any state law claim which bears any relationship to HOLA.  She disavows any claim which could be considered to be a violation of HOLA or for which HOLA provides a remedy.  The plaintiff will be estopped, by order of this court, from ever asserting any claim which would be a direct violation of HOLA or for which HOLA would provide a remedy.  The plaintiff's use of the terms "excess" and "excessive" relates to the excess over what has been represented, not what the law forbids.

Substantial Disputed Question of Federal Law:

The defendants have asserted, in a conclusory fashion, that there are substantial questions of federal law involved in this action.  While there may or may not be substantial questions of federal law, the court concludes that, in any event, the plaintiff does not rely on any federal law.  Again, the plaintiff will be, by order of this court, estopped from pursuing any purported state law claim if that state law claim requires, as an essential element, any reliance on federal law.

The Motion to Remand will be granted.

This 3rd  of May, 2005.

**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**